THE SOCIETY FOR ESTABLISHING USEFUL MANUFACTURES *vs.* HENRY M. LOW.

1. Where the equity of the bill is not denied, or where the facts upon which the equity rests are admitted, but the answer sets up new matter in avoidance, the injunction will not be dissolved or denied upon the answer alone.

2. New matter, by way of justification or avoidance of the matters contained in the bill, will not avail the defendant upon the hearing upon bill and answer.

3. The right of a party to an injunction, or to its continuance, cannot be prejudiced or altered by the mere fact that the case is heard upon the argument of the rule to show cause why an injunction should not issue, upon the complainant's motion, and not upon a motion to dissolve by the defendant. The defendant, in such case, stands upon the same ground and with the same rights that he would upon the motion to dissolve.

4. A denial of the complainant's right, upon an application for an injunction, must be made upon the defendant's knowledge, and not upon his belief or opinion.

5. The Passaic, at the great falls, is a private river. The complainants are the riparian proprietors, and are entitled to the use and enjoyment of the stream without diminution or alteration.

6. Where a party seeks an injunction to restrain a violation of a covenant under a lease, and such covenant is a continuing covenant running with the land, and its violation is of constant recurrence, his title to relief is not forfeited by long delay in making his application.

7. If, under the circumstances, an injunction had been asked without due notice that the complainant insisted upon the performance of the covenant, the motion might have been resisted upon the ground of surprise.

---

The bill in this cause was filed to enforce the specific performance of certain covenants in a lease. It contained a prayer for injunction to restrain the defendant from exceeding his rights under the lease. The injunction was withheld, and a rule to show cause granted. The cause is now heard upon the argument of the rule.

*Mr. A. S. Pennington,* for the rule.

The lease and all its covenants, as set out in the bill, are admitted by the answer. The answer also admits that no gauge has been inserted by the defendant, pursuant to the terms of his agreement. This establishes our case.

There is no covenant in the lease to maintain any designated head of water, nor any pretence that the complainants have violated any of the covenants of the lease.

The excessive use of water is irreparable injury, which there is no mode of estimating. The consumption cannot be gauged, except by stopping the supply.

The pretence that the head of water in the canal has been

reduced, is groundless. The head is, in fact, higher now, than at the date of the lease.

The right of the complainants to the water was established years ago by this court. The application is merely to restrain its use until the gauge is inserted.

*Mr. A. B. Woodruff*, contra.

The bill is filed for two objects.

1. To restrain the use of water.

2. To compel the performance of covenants in the lease.

The defendant is not a tenant of the complainants, except as to one foot of water. If he uses more than that, he is a mere trespasser. He pays rent to the Olivers, who are his landlords. The complainants have only a reversionary interest.

The evidence does not show that the defendant uses more than one foot of water. Nor does it show what is meant by a foot of water.

The defendant's witnesses prove that his machinery is driven by less than one foot of water. All the machinery can be driven by twelve horse power. He does not use over one square foot under thirty inch head.

There is no evidence that the complainants own the water in the raceway. This is the first step in the proof essential to sustain the application. 3 *Daniell's Ch. Pr.* 1834, *note* 1.

If the complainants have allowed other parties, by user of more than twenty years, to acquire rights adverse to them, such adverse right can furnish no ground for the interference of this court.

Admitting complainants' right, they have no title to the injunction. The defendant's act is neither waste, nor destruction, nor irreparable injury.

There is no charge that the defendant is not responsible.

The complainants are entitled to no account, except as incident to the commission of waste. 3 *Daniell's Ch. Pr.* 1856.

The defendant is entitled to the foot of water under head of thirty inches. That head the complainants are bound to

maintain. They lease more water than they can furnish in a dry season. They have leased twenty-two square feet of water to different lessees, which the society themselves say is all they can furnish. 1 *Halst. Ch. R.* 126, 128, 134; *Saxton* 393.

The injunction compelling the defendant to insert an aperture, would stop his mill and compel him to suspend his business. This injury the court will not inflict.

*Mr. Frelinghuysen,* Attorney General, in reply.

The injunction is asked, not because the defendant uses too much water, but because he refuses to put in a gauge by which the water can be accurately measured. The contract of the defendant is in clear terms. We ask that it be enforced.

The complainants have an interest in the surplus and wasted water, which the court will protect. The defendant covenanted to respect the complainants' rights to that water, and to draw only through an iron aperture. It is that covenant which we seek to enforce.

The title of the complainants to the water, we admit, must be clear. That title is matter of law, and has been established.

The answer admits that the society own all the mill sites, and consequently all the water power, except such as they have sold or leased. If the defendant alleges that they have parted with their rights, the proof of that fact is upon him.

The defence is that the defendant is entitled to the thirty inch head above the aperture. The lease contains no such covenant, nor are there any circumstances from which it can be inferred at law.

If the aperture is inserted, and the society do not furnish a sufficient head, the defendant has his remedy. There is no covenant in the lease alleged to have been violated by them.

The allegation of the answer is, that the society were bound at all times to furnish the foot of water under a head of thirty inches. The water was to be furnished under the head as it then was. It is notorious that every summer the

water is too low to furnish the head insisted on by the defendant. The meaning of the contract could not have been as the defendant insists.

THE CHANCELLOR. On the fifth of April, 1831, the complainants, being the owners of certain lands and water power at Paterson, conveyed to Roswell L. Colt, lot No. 8, on their middle canal, with the right of drawing from the canal one foot square of water, to be drawn in the mode hereinafter specified. On the first of February, 1837, Colt leased the lot and water power to William Beggs, for the term of twenty-one years, with the privilege of renewal upon the terms and conditions therein, and in the indenture of renewal, specified.

On the first of February, 1858, Robert M. Gibbes and others, the then owners of the land and water power, leased to Beggs; and Thomas D. Hoxsey, the then owner of the interest of Beggs therein, together with the complainants, executed an instrument in writing, renewing the said lease for the further term of twenty-one years. The complainants seek to enforce the specific performance of the covenants contained in this lease against the defendant, who occupies the premises by assignment from Hoxsey.

The terms of the contract are clear and precise. The lessors demised the lot and mill, with the right and privilege of drawing and using on said lot, from the middle canal in the rear thereof, and discharging the same in front of said lot into the canal, in Congress street, one foot square of water, equal to one hundred and forty-four square inches of water, strict measure, and no more; said water to be drawn through a cast iron aperture, six inches one way by twenty-four inches the other, strict measure; and no devices or contrivances to be made or used to increase the natural flow of water.

The lessee, for himself and his assigns, among other things, covenanted with the complainants, that he would cause a cast iron aperture to be made, and permanently and securely

placed in the bank of the middle canal, in the rear of the said lot, not lower than the bottom of the trunk leading from the canal to the lot, as the trunk was at the execution of the original lease, and which aperture should in no case, and at no time, admit of a greater quantity of water to pass, than what will naturally flow through an aperture six inches one way by two feet the other, strict measure; and that he would at all times during the continuance of his lease, maintain and keep the trunk, trough gates, and aperture upon the said premises, so as effectually to prevent all waste or use of water in any manner whatever, beyond the limited quantity allowed by said indenture to be taken or drawn from said middle canal, accidents alone excepted; and further, that he would not use or permit to be used, or allow to run to waste on said lot, any more or greater quantity of water, or in any other mode take or draw the same, than is by the said lease allowed.

The bill is filed to enforce the specific performance of these covenants on the part of the lessee. It asks that the defendant be restrained from drawing more water than one hundred and forty-four square inches, or in any other mode than through the aperture specified in the lease.

The answer admits all the material charges of the bill, upon which the claim to an injunction is founded. It admits the existence and obligation of the lease, as set out in the bill, that no aperture has been inserted as required by the covenant, that the water drawn and used upon the premises is not drawn through an aperture of the character specified in the lease, and does not deny that more than one foot square of water is used upon the premises. The bill charges that the defendant has used, and is now using upon the premises, not less than four square feet of water, and as they are informed and believe, a great deal more, and that he ought to pay $600 a year for each square foot of water so used, which is the usual rate of the rent of water in Paterson. Affidavits annexed to the bill, sustain the allegations that the water is drawn upon the defendant's wheel without

any gauge, and that he is using at least four square feet of water. The defendant denies that he is using a quantity of water *greatly exceeding* one square foot; and affidavits are annexed to the answer to show that it is impossible to use more than two square feet of water on the defendant's wheel, and that the machinery used in the mill requires less power to drive it, than would be furnished by two square feet of water.

This very conflict of testimony demonstrates the propriety of an injunction. The defendant, by his lease, is entitled to draw but one square foot of water. All that he uses beyond that is an unauthorized diversion and use of water belonging to the complainants, without the possibility of their ascertaining the extent to which they are injured. It was against this very use that the covenants in the lease are designed to guard. The covenant on the part of the lessee is not only that he will use but one square foot of water, but that he will maintain an aperture which shall effectually prevent the use of water, in any manner whatever, beyond the quantity allowed by the lease, and that the water shall be drawn and used in no other mode. The design of the covenants clearly was, not only to prevent the use of more water than was allowed by the lease, but to furnish at all times unequivocal evidence of the quantity used. The complainants ask, therefore, not only that the defendant should be restrained from using an excess of water to their prejudice, but that he should be restrained from drawing any water, under color of his lease, except in the mode therein specified; that they may have the protection against the wrongful acts of the defendant, which the covenants in the lease were designed to secure. Upon the case made by the bill, the complainants are clearly entitled to an injunction.

The question, if any there be in regard to the case, is created by the matters set up in the answer by way of justification or avoidance. It would, perhaps, be a sufficient answer to the matters insisted on by way of defence, to say that they cannot avail the defendant at this stage of the

cause. Where the equity of the bill is not denied, or where the facts upon which the equity rests are admitted, but the answer sets up new matter in 'avoidance, the injunction will not be dissolved or denied. *Butler* v. *The Society*, 1 *Beas.* 266, 506; *Green* v. *Pallas, Ibid.* 267; *Allen* v. *Crabcroft, Barn. Ch. R.* 373; *Minturn* v. *Seymour*, 4 *Johns. Ch. R.* 499; *Salmon* v. *Clagett*, 3 *Bland's Ch. R.* 162–3.

The defendant in this case stands upon the same ground, and with the same rights, that he would do upon a motion to dissolve. The complainants' equity, and their title to an injunction upon the case made by the bill, was clear. The injunction was withheld in the first instance, and the rule to show cause was granted, because it was deemed proper, under the circumstances, that the defendant should have an opportunity of denying that equity. The complainants' right to an injunction, or to its continuance, cannot be prejudiced or altered by the mere fact that the case now stands upon the complainants' motion, and not upon a motion to dissolve.

The only allegation in the answer which is directly responsive to the allegations of the bill and a denial of the complainants' equity, is that which relates to their title to the water in controversy.

The bill alleges that the complainants are the owners of the water and of the works at Paterson, under their act of incorporation. The defendant, by his answer, says that he believes that neither the act of incorporation, nor the supplements thereto, nor any acts which the society have done, nor all combined, vest the property or ownership of the waters of the Passaic river, or in the canals or raceways at Paterson, in the complainants, and that they have no right to the said waters, or to divert the same, except for the purposes of navigation.

A denial of the complainants' right upon an application for an injunction must be upon the defendant's knowledge, and not upon his belief or opinion. This is clearly a matter not within, and not pretended to be within, the defendant's

knowledge. If the allegation be untrue, it does not expose him to the penalties of perjury.

Nor is he in a situation to deny the complainants' title. He is under covenant with them not to draw the water, and he is estopped by his covenant from denying their right. All the right he has to the water is derived from their grant. He holds as tenant under their grantee, and neither he, nor his immediate landlords, can deny the complainants' title.

But if the defendant was in a situation to call in question the title of the complainants, and if his denial of the title were absolute, the allegation of the answer is destitute of foundation. The title of the complainants, under their charter, to the waters of the Passaic, for the purposes to which it is applied by them, has been too often recognized by this court, and is too firmly established, to be treated as an open question. As early as 1829, in the case of *The Society* v. *The Morris Canal and Banking Company*, Chancellor Williamson, in an opinion characterized by his usual learning and ability, and which, to the regret of the court and the loss of the profession, is not reported, said: " The river Passaic, at the great falls, is a private and not a public river. As owners of the lands, the society has a clear and undoubted right, in my opinion, to the flow of all the waters of the Passaic at the great falls in their ancient channel, without diminution or alteration. The society has appropriated by occupancy the whole water of the Passaic river for manufacturing purposes, as they had a right to do under their charter."

Chancellor Vroom, in 1830, expresses his opinion as to the rights of the society in language equally clear and emphatic. " The society," he says, " are the riparian proprietors, and upon plain and acknowledged common law principles, they are entitled to the use of the stream, and have a right to enjoy it without diminution or alteration. Their right is not confined to the use of so much water as may be necessary for their present purposes. They have appropriated to themselves the use of the stream. They have the right to take the whole of it

for the purposes of their manufactures, provided it is again, after being used, restored to the bed of the river· for the benefit of those below." *The Society* v. *The Morris Canal and Banking Co., Saxton* 157.

Again : the defendant alleges that he has been informed and believes, that the water has been drawn through the trunk, as it now is, for more than thirty years, since the original lease to Beggs. This allegation is not made upon the defendant's knowledge, and cannot, therefore, avail upon this motion. But admitting it to be true, how can it affect the complainants' rights ? The lease was renewed, and the covenants which the complainants seek to enforce, were entered into in 1857. By those covenants the lessee bound himself from time to time, and at all times, to maintain the aperture which then was, or thereafter should be, made, so as effectually to prevent the use of water beyond the limited quantity allowed by the lease. There can be, therefore, no pretence of title acquired by the lessee by long continued enjoyment adverse to his covenant. Nor is it perceived that there is any ground for declaring that the complainants have forfeited their title to relief by laches upon their part. The covenant on the part of the lessee, to draw the water only in the mode specified in the lease, is a continuing covenant running with the land, binding upon the assignee, and which is daily violated so long as the water continues to be drawn otherwise than in conformity with the terms of the covenant. If, under the circumstances, the injunction had been asked without notice that the complainants insisted upon the insertion of the aperture, there would have been reason for resisting the motion upon the ground of surprise. But no such defence is suggested. The defendant had written notice to insert the aperture, long before the filing of the bill.

But the main ground of objection to the granting of the injunction is, that the complainants have not kept and performed the covenants of the lease on their part in this, to wit, that the water in the raceway has not been uniformly kept at a head of thirty inches above the centre of the pro-

posed aperture. The defendant says that he has been advised by counsel, and verily believes, that the complainants are bound by law to keep at all times (except in case of necessary repairs) in the middle canal, a quantity of water sufficient to furnish, if a cast iron aperture should be inserted at the bottom of the canal of the dimensions of six inches by twenty-four inches, according to the terms of the lease, a head of at least thirty inches above the centre of the aperture; that such was the intention of the parties to the deed from the society to Colt, and of the parties to the lease to Beggs; that such was the understanding of the parties upon the renewal of the lease to Hoxsey; and that the complainants have failed to supply in the said canal, a quantity of water sufficient to enable the defendant to draw at all times one foot square of water under a head or pressure of at least thirty inches, as intended and understood by the said lease, and the parties thereto.

The answer to the objection is, that there is no covenant on the part of the complainants to keep the water at any given head above the aperture. The only covenant, on their part, is that they will keep up and maintain the main dam and banks of the canal in front and rear of the demised premises, so that the foot square of water thereby demised, may at all times, during the said demise, flow freely into and upon, and out of and from the said demised premises, without diminution or hindrance, unavoidable accident alone excepted.

It may well be, that when the lease was originally made, and when it was renewed, the dam and the banks of the canal were constructed with the view and intention of maintaining a head of thirty inches of water above the middle of the aperture; and there is no allegation that they have not been so kept and maintained. The allegation is that there is not, at all seasons of the year, water enough in the canal to maintain the full head for which the canal was intended. There is no covenant by the complainants, express or implied, that they would at all times furnish that head. Admit

C*

that the society are bound by the terms of the covenant to furnish the stipulated supply of water, there is clearly no covenant as to the degree of pressure under which that supply should be furnished. The answer alleges, that during the continuance of the lease to Beggs, a supply of water sufficient to maintain that head at all times was not furnished. If, then, the supply to maintain such head could be furnished, and the parties to the lease intended that it should be, would there not have been an express covenant to that effect? If, on the other hand, by reason of a deficiency of water in the dry season, or from any other cause, that head could not at all times be maintained, is it probable that the lessors covenanted or intended to covenant to furnish such supply? Is it not more probable that the lease was made and accepted by the lessees, subject to that fluctuation of the head to which all water power is subject during the course of the year? Be this as it may, the obvious fact is that no such covenant was made, and none can be implied.

The defendant alleges that he is ready to place and use in his mill, a wheel capable of using only one square foot of water under a head of thirty inches, as soon as the wheel can be constructed. But that is no compliance with his covenant to draw the water from the canal in the mode specified in his lease.

Again: he alleges that he is willing to insert the aperture as required by the covenant, as soon as the complainants will furnish, the year round, a foot square of water under a head of thirty inches. But he has no right to annex such condition to the performance of his covenant.

There are also allegations in the answer, that by a contract of the complainants with a mill owner on the upper canal, the supply of water in the middle canal had been irregular; and that, by reason of the increased velocity of the flow of water through the canals, the head under which the water is drawn upon the wheel has been diminished, and by reason of the increased quantity of water thrown into the lower canal, the efficient head and fall, and consequent power of the wheel, has been diminished. It may be that these and

other similar causes may furnish grounds of action at law, or in equity, against the complainants. But they afford no reason, in my judgment, why this injunction should not issue. On the contrary, they evince the propriety, if not the actual necessity, of the issue of the injunction, to restrain the mill owner from drawing more water than by his covenant he is entitled to. It is obvious that if every or any mill owner is permitted to draw water without limit, he must do so to the prejudice, not only of the complainants, but of every other mill owner upon the power. The velocity of the flow of water in the upper canal is increased, and by this increase of water in the tail-race or lower canal, the efficient head and fall at every mill upon that level is diminished. The most effectual mode of guarding against these grievances is to require each mill owner to draw water only through the aperture prescribed by his lease, so as effectually to prevent the use of more water than he is entitled to. It is the usual mode adopted on large water powers, where different mill owners draw their water from the same reservoir, and seems absolutely essential to protect the rights both of lessor and lessees. To allow the existence of the evils to prevail as a ground for not enforcing the use of the gauge at every mill, is simply to allow the effects of the wrong to justify its continuance.

In the case of *The Society* v. *Butler*, 2 *Beasley* 498, the Court of Appeals refused to enforce the specific performance of a contract made by the complainants, for the reason, among others, that its performance would operate injuriously to the interests of other lessees. I took occasion in that case, to express my views of the peculiar relation occupied by the complainants in regard to the lessees of their power. The same reason which influenced the court in denying the injunction in that case, affords an inducement why the defendant should be held to the specific performance of his covenant to use no more water than he is entitled to, and to measure the quantity used by the prescribed form of gauge.

The injunction is granted. The defendant will be allowed twenty days to procure and insert the gauge.